DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue, 34th Floor
New York, NY 10158
David Wander, Esq. (dhw@dmlegal.com)
*Attorneys for Sheldrake Lofts LLC*
*Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
In re:                                                               Chapter 11

SHELDRAKE LOFTS LLC,
                                                       Case No. 10-23650-rdd

Debtor and Debtor in Possession.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MOTION BY DEBTOR FOR ORDER EXTENDING EXCLUSIVE PERIODS, PURSUANT TO § 1121(d) OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

       The application of Sheldrake Lofts LLC **("Debtor")**, debtor and debtor in possession, by its attorneys, Davidoff Malito & Hutcher LLP, represents and says as follows:

### INTRODUCTION

1.      The Debtor seeks the entry of an order extending the Debtor's exclusive periods to file and solicit acceptances to a plan of reorganization for and additional 120 days. This is the first request for an extension of the Debtor's exclusive periods.

### JURISDICTION

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**3.**      The statutory predicate for the relief requested is § 1121 of the Bankruptcy Code.

## BACKGROUND

**The Bankruptcy Case**

4. On August 10, 2010 ("**Filing Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Shortly thereafter, the Debtor filed its schedules of assets and liabilities (**"Schedules"**), a statement of financial affairs and other required lists and schedules.

5. The Debtor has been authorized to continue to operate its business and manage its property as a debtor in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. The Debtor has retained the law firm of Davidoff Malito & Hutcher LLP as its bankruptcy attorneys, pursuant to Order of the Court.

7. A creditors' committee has not been formed in this case. No trustee or examiner has been appointed.

8. <u>Debtor's Assets and Liabilities.</u> The Debtor owns several contiguous parcels of real property in the Village of Mamaroneck (**"Village"**) situated along the Sheldrake River: 270 Waverly Avenue (**"270 Waverly"**),[1] 206-208 Waverly Avenue (**"206 Waverly"**), 188 Waverly Avenue (**"188 Waverly"** and 147 Plaza Avenue (**"147 Plaza"**) (collectively the **"Property"**). While Schedule "A" of the Petition lists the current fair market value of the Property at $3,000,000, it also projects the value to increase to $15,000,000 if the Debtor obtains a building permit.[2]

9. The Debtor listed claims against the Village estimated at $40,000,000 in Schedule "B" of the Petition, based upon the Village's failure to issue the Debtor a building permit. The

---

[1] For many years, Blood Brothers Auto Wreckers, Inc. conducted an auto wrecking business at 270 Waverly.

[2] The Property was appraised in its "As Is" condition, as of July 18, 2008, at $19,000,000.

Debtor also listed claims in Schedule B against Remediation Capital Funding, LLC **("RCF"),** the Debtor's pre-petition lender, and Cozen & O'Connor **("Cozen Firm")**, a law firm RCF had the Debtor retain to prosecute its litigation against the Village, in an "unknown" amount. Additionally, the Debtor's assets include a $240,000 claim against the Village for the return of a "recreation fee" that the Debtor was required to pay the Village as part of the building permit application process.

10. The Debtor's liabilities include RCF's presently undersecured claim estimated by the Debtor at $12,000,000 in Schedule "D" of the Petition, excluding any offsets or defenses.[3] The Debtor also owes real property taxes in an undetermined amount, as set forth in Schedule "E" of the Petition. In addition, the Debtor listed ten (10) unsecured creditors with claims totaling in excess of $1.8 million in Schedule "F" of the Petition.

11. <u>Cash Collateral.</u> On September 17, 2010, the Debtor filed a motion for use of cash collateral and approving an insurance premium finance agreement. Thereafter, an objection to the Debtor's use of cash collateral was filed by RCF. After several hearings, the parties agreed to a consensual resolution of the motion and an interim order authorizing the use of cash collateral, covering the period from the Filing Date through October 31, 2010 was entered by the Court. Thereafter, RCF agreed to the continued use of cash collateral, on an interim basis, for

---

[3] The Debtor entered into a Loan Agreement dated March 2, 2007 with RCF, pursuant to which RCF agreed to loan up to $6,635,000 in total principal payments to or for the benefit of the Debtor. The loan was for eighteen (18) months and matured on September 1, 2008. The interest rate was 14% for the first six months and 18% for the next twelve months, with the default rate at 24.5%. The loan also included an exit fee of $132,700. The Debtor also executed a Note dated March 2, 2007, in favor of RCF, in the sum of $6,635,000. Simultaneously with the execution of the RCF loan, the Debtor intended to purchase three parcels comprising the Property: 270 Waverly, 206 Waverly and 188 Waverly (collectively **"Acquisition Properties"**). At that time, the Debtor already owned 147 Plaza. The RCF loan was for the Debtor's purchase of the Acquisition Properties, a refinancing of an existing mortgage encumbering 147 Plaza, and certain improvements to the Property in order to redevelop the site as a luxury condominium development. The RCF loan was intended to provide the Debtor with bridge financing until it received a building permit and closed on its construction financing. To secure the RCF loan, the Debtor executed a Mortgage, Security Agreement and Assignment of Leases and Rents dated March 2, 2007 **("Mortgage")**. Upon information and belief, the Mortgage was duly recorded in the Office of the Westchester County Clerk's Office. Pursuant to the Mortgage, the Debtor provided RCF with a first mortgage lien on the Property, an assignment of rents, and a lien on other assets of the Debtor.

the months of November and December 2010 and RCF approved the form of an amended interim order which is being filed with the Court.

12.     Motion by RCF for Relief from Stay.  On September 21, 2010, RCF filed a motion for relief from the automatic stay, seeking to continue a foreclosure proceeding that was pending on the Filing Date, or, alternatively, for an order dismissing this case.  On November 10, 2010, RCF filed an amended motion.  The parties are presently engaged in discovery, including the production of documents and depositions, and a hearing on the motion is scheduled for December 17, 2010.

13.     Removal of Article 78 Proceedings from State Court.  The Debtor proposed replacing the auto wrecking business and the other parcels of the Property with a residential development called "Sheldrake Estates" that originally was planned to have 114 units.  On August 28, 2006, after a lengthy environmental review process, a public review period and extensive discussion and analysis, the Village Board of Trustee's approved a rezoning of 270 Waverly and 147 Plaza to residential use.  On December 17, 2007, the Debtor received final site approval from the Village Planning Board for a 96-unit residential project and, before the end of year, the Debtor filed its sight plan along with an application for a building permit.

14.     Under applicable local law, the Village Director of Buildings was required to approve or disapprove the Debtor's building permit application within a "reasonable" amount of time.  § *126-12 of the Villages Local Laws.*   However, more than five months passed without any apparent action being taken.  Meanwhile, the former Village Mayor and one of the Village trustees were aggressively promoting a new law which would amend the floor area ratio (FAR) for new buildings in the Village and clarify the manner in which the FAR would be calculated.  On May 15, 2008, they passed Local Law No. 5-2008 **("New Law"),** amending Chapter 342 of

the Village Code, regarding FAR and its calculation. Two months later, on July 25, 2008, the Debtor was informed by the Village Director of Buildings that the New Law applied to the project and, in December of 2008, he issued a formal notice of disapproval of the Debtor's building permit application.

15. On or about January 20, 2009, the Debtor filed an application with the Village Zoning Board of Appeals **("ZBA")**, seeking an interpretation that the New Law did not apply to the Project and, alternatively, if the New Law did apply, the Debtor requested a variance from the new FAR restrictions. After the ZBA denied the Debtor's request for a variance, the Debtor commenced several Article 78 proceedings against the Village, in the Supreme Court of the State of New York, Westchester County, two of which were currently pending on the Filing Date.

16. On October 4, 2010 and October 5, 2010, the Debtor filed a Notice of Removal for the two pending Article 78 proceedings and they are now Adversary Proceeding Nos. 10-08424 and 10-08426. The initial pre-trial conference in both adversary proceedings is scheduled for December 17, 2010.

17. <u>Operating Reports.</u> The Debtor is current with its obligations to file monthly operating reports, having filed such reports covering the post-petition period through October 31, 2010.

18. <u>Additional Litigation.</u> The Debtor is now in the process of drafting a complaint against RCF, seeking to subordinate its claim and transfer its lien to the estate, pursuant to § 510(c) of the Bankruptcy Code. In addition, the Debtor will be seeking damages from RCF and the Cozen Firm as a result of their conduct in connection with the Article 78 proceedings and settlement negotiations with the Village.

19. The Debtor is also in the process of drafting a complaint against the Village in connection with its failure to issue the Debtor a building permit.

**RELIEF REQUESTED**

20. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Exclusive Filing Period"). Section 1121(c)(3) of the Bankruptcy Code provides that, if a debtor files a plan within the 120 day Exclusive Filing Period, it has a period of 180 days after the commencement of the case to obtain acceptance of such plan, during which time competing plans may not be filed (the "Solicitation Period" and Exclusive Filing Period are together referred to as the "Exclusive Periods").

21. Unless extended, the Debtor's Exclusive Filing Period and Solicitation Period will expire on December 8, 2010 and February 7, 2011, respectively (the 180th day after the Filing Date is Sunday, February 6th). The Debtor requests that, pursuant to section 1121(d), the Court authorize an extension of the Debtors' Exclusive Period and Solicitation Period by 120-days, through and including April 7, 2011 and June 9, 2011, respectively, without prejudice to the Debtor's right to seek a further extension of the Exclusive Periods.

22. The Exclusive Periods are intended to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan, without the deterioration and disruption of the debtor's business that is likely to be caused by the filing of competing plans by non-debtor parties. The primary objective of a chapter 11 case is the formulation, confirmation and consummation of a consensual chapter 11 plan.

23. Where the initial 120 and 180 day Exclusive Periods provided for in the Bankruptcy Code prove to be an unrealistic time frame, section 1121 (d) of the Bankruptcy Code

allows the Court to extend a debtor's Exclusive Periods for cause. Although the Bankruptcy Code does not define the term "cause", the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. See H. R. Rep. No. 95-595 at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 61 91 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interest by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

24. Congress built flexibility into section 1121 of the Bankruptcy Code to give the debtor an adequate opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan of reorganization with creditors. In re Newark Airport I Hotel Ltd. P'ship., 156 B.R. 444, 451 (Bankr. D.N.J.), aff'd, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); Gaines v. Perkins (In re - Perkins) 71 B.R. 294, 297-98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

25. In determining whether cause exists to extend the Exclusive Periods, a court may consider a variety of factors to assess the totality of circumstances in each case. *See e.g.* Adelphia Communications Corp., 352 B.R. 578 (Bankr. S.D.N.Y. 2006).[4]

---

[4] The Adelphia court listed the following nine (9) factors:

1. The size and complexity of the case;
2. The necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;
3. The existence of good faith progress towards reorganization;
4. The fact that the debtor is paying its bills as they become due;
5. Whether the debtor has demonstrated reasonable prospects for filing a viable plan;
6. Whether the debtor has made progress in negotiations with its creditors;

26. While this case may not be a large case with respect to the number of creditors, or the amount of assets when compared to other chapter 11 cases in this district, it not a small or simple case. RCF's claim is well over $10 million, general unsecured claims exceed $1 million and the value of the Debtor's real property is between $3-15 million. The Debtor is also asserting significant claims against the Village, RCF and the Cozen Firm totaling tens of millions of dollars.

27. Moreover, there are various legal and factual issues of a significant magnitude and complexity relating to the Article 78 proceedings that need to be addressed in the pending litigation, before the Debtor can file a viable plan. If it is determined that the Debtor is entitled to a building permit, that will be a 'game-changer' for this chapter 11 case and provide the foundation for a viable plan.

28. Additionally, there are significant legal and factual issues that need to be litigated with respect to RCF's claim and lien and, once there is a resolution of such matters, the Debtor believes it will be in a position to commence negotiations with RCF regarding a plan or, alternatively, file a cram-down plan.

29. Clearly, the Debtor needs more time to be in a position to formulate, negotiate and file a viable plan of reorganization and prepare adequate information to allow creditors to determine whether to accept such plan.

---

7. The amount of time which has elapsed in the case;
8. Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization; and
9. Whether an unresolved contingency exists.

*Id.*

30. As set forth above, this is the Debtor's first request for an extension of its exclusive periods and the Debtor submits that sufficient cause has been shown for the requested relief to be granted.

31. A proposed Order granting the relief requested is annexed as **Exhibit "A."** The Debtor submits that the entry of the Order is in the best interests of the Debtor and his estate.

**Notice of the Motion**

32. The Debtor intends to give notice of this motion by serving a copy the motion and exhibits upon (i) the U. S. Trustee's Office; (ii) RCF and all other known creditors of the Debtor (except for the creditors who are tenants of the debtor with nominal claims); and (iii) each person that filed a notice of appearance in this case.

**No Prior Application**

33. No prior application for the relief requested has been made to this Court or any other court.

**WHEREFORE**, the Debtor respectfully requests that the motion be granted, for which no previous motion has been made to this or any other court, and that the Debtor be granted such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 8, 2010

                                                DAVIDOFF MALITO & HUTCHER LLP

                                                By: /s/David Wander
                                                    David Wander, Esq.
                                              605 Third Avenue, 34th Floor
                                              New York, NY 10158
                                              dhw@dmlegal.com

                                              *Attorneys for Sheldrake Lofts LLC*
                                              *Debtor and Debtor in Possession*