# DAVIDOFF MALITO & HUTCHER LLP

| GARDEN CITY | ATTORNEYS AT LAW | ALBANY |
| --- | --- | --- |
| 200 GARDEN CITY PLAZA | 605 THIRD AVENUE | 150 STATE STREET |
| GARDEN CITY, N.Y. 11530 | NEW YORK, NEW YORK 10158 | ALBANY, N.Y. 12207 |
| (516) 248-6400 | | (518) 465-8230 |

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3212
E-MAIL: dhw@dmlegal.com

February 10, 2011

<u>Via ECF and Email</u>

The Honorable Robert D. Drain
United States Bankruptcy Court, SDNY
300 Quarropas Street
White Plains, New York 11201

    Re:    <u>In re Sheldrake Lofts, LLC
              Case No. 10-23650-rdd</u>

Dear Judge Drain:

    I am writing in reply to the letter by counsel for Remediation Capital Funding, LLC ("RCF") dated January 31, 2011 **("RCF Letter")**, in response to my letter to Your Honor dated January 27, 2011 regarding the unresolved dispute as to RCF's claim of an attorney-client privilege with respect to certain documents and deposition testimony.

    First, almost all of the facts set forth on page 2 of the RCF Letter are either irrelevant [¶¶ (i)-(iv)] or incorrectly labeled as "not disputed" [(¶¶ vi-vii)].

    Regarding ¶ (vi), neither RCF nor Mr. Roberts ever disclosed to Sheldrake Lofts principal, Ofer Attia, that Mr. Roberts had been "advising RCF in connection with the Article 78 proceedings and their effect on the value of RCF's collateral for over a year prior to Mr. Roberts' appearance in those proceedings for the debtor...."

    Regarding ¶ (vii), Sheldrake Lofts never waived any conflict relating to Mr. Roberts and <u>his</u> representation of Sheldrake Lofts in the Article 78 proceedings nor could it have made such a waiver since Mr. Roberts never informed Sheldrake Lofts that any conflict existed. The January 26, 2010 letter agreement between RCF and Sheldrake Lofts was only intended to waive any conflict with respect to RCF's continued prosecution of its foreclosure proceeding, for which it had retained separate counsel, while RCF assisted Sheldrake Lofts in its prosecution of the Article 78 proceedings.

    Pursuant to Rule 1.7(b) of the New York Rules of Professional Conduct, a lawyer with a conflict of interest between two concurrent clients must consult with the clients and obtain their

00417703.4

informed consent, in writing, to the lawyer's continued representation of both clients. Under Rule 1.0(j), "informed consent" is defined as an "agreement by a person to a proposed course of conduct after the **lawyer** has communicated information adequate for the person to make an informed decision..." (emphasis added).

RCF has failed to identify any communication which evidences that Mr. Roberts ever consulted with Mr. Attia about a conflict of interest. Instead, RCF proffers a letter <u>between Debtor and RCF</u> as an express waiver of the attorney-client privilege. Clearly, under the plain language of the applicable rules, this communication cannot possibly constitute "informed consent."

Additionally, RCF's contention that it cannot have a "joint legal interest" with Sheldrake Lofts by virtue of the fact that it was not a named party to the Article 78 proceedings is unsupported by any legal authorities. The cases cited in my January 27, 2011 letter, as well as a leading treatise, *McCormick on Evidence*, make clear that when a single attorney represents both borrower and lender, who are separately interested in the same matter, neither party is afforded an attorney-client privilege in a subsequent dispute with the other party as to any communications between the parties and the lawyer previously retained to represent both parties. Moreover, RCF relies on a single case, *North River Ins. Co. v. Columbia Casualty Co.*, that actually undercuts it's position. In *North River,* the court stated that the test for a joint legal interest "is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal." 1195 WL 5792 at *4 (S.D.N.Y. Jan. 5 1995).

Finally, RCF's claim that Mr. Roberts did not share any of Sheldrake Lofts' privileged information with RCF misses the point, as well as not being true. A comparison of various dates, discussed in my January 27th letter, when Mr. Roberts was communicating with Mr. Attia, with similar dates listed on RCF's privilege log, reveal that at the same time Mr. Roberts was communicating with both Mr. Attia and Mr. Ekstein about litigation strategy, he was having private communications with RCF's principals, presumably on the same topic. For example, on March 9, 2010, Mr. Roberts asked Mr. Attia and RCF's principal Erik Ekstein, in the same email, on what terms they would settle the Article 78 proceedings with the Village of Mamaroneck. Also, beginning on March 9th and apparently continuing until at least March 15th, are two email chains involving Ken Roberts and RCF's principals concerning "legal advice regarding Article 78 proceedings" and "legal advice regarding Sheldrake's property."

At the same time Mr. Roberts was communicating with both Messrs. Attia and Ekstein about his meeting with the Village Attorney, telling them "we're both thinking of settlement possibilities," he is having private communications with Mr. Ekstein via email on the same date, according to RCF's privilege log.

00417703.4

On May 19th, when Mr. Roberts is telling Mr. Attia that Sheldrake Lofts' claims against the Village "are owned by [RCF] by virtue of the foreclosure judgment," he is again having private communications with RCF's principals, as shown by RCF's privilege log.

On June 22, 2010, Mr. Roberts attended a meeting with the Village Attorney, among others, representing Sheldrake Lofts. At the same time, he was apparently preparing for this meeting via private communications with RCF's principals, on June 21, 2010, as shown by RCF's privilege log, and he also had private communications with RCF's principals via email on June 22nd, the same day as the meeting.

Undoubtedly, as shown above, Mr. Roberts was communicating with RCF's principals about litigation strategy and other matters that had a direct bearing on his representation of Sheldrake Lofts as its counsel in the Article 78 proceedings.

Finally, enclosed for the Court's reference is another version of RCF's privilege log that I just received this morning from RCF's counsel, with the dates of the alleged privileged communications unscrambled and in chronological order.

Respectfully submitted,

David H. Wander

Enclosure

cc by email:
Jarrett M. Behar, Esq.
Jeffrey Traurig, Esq.
Leigh Smith, Esq.