UNITED STATES BANKRUPTCY COURT          **Return Date: March 2, 2011**
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                          :        Chapter 11
                                                          :
SHELDRAKE LOFTS LLC,                       :        Case No. 10-23650-rdd
                                                          :
                    Debtor.                           :
------------------------------------------------------------x

 

**MEMORANDUM OF LAW IN SUPPORT OF
REMEDIATION CAPITAL FUNDING LLC'S
MOTION FOR A PROTECTIVE ORDER
<u>PURSUANT TO FED. R. CIV. P. 26(c)</u>**

SINNREICH KOSAKOFF & MESSINA LLP
267 Carleton Avenue, Suite 301
Central Islip, New York 11722
(631) 650-1200

Attorneys for Remediation Capital Funding LLC

**Preliminary Statement**

Remediation Capital Funding LLC ("RCF") respectfully submits this memorandum of law in support of its motion for a protective order pursuant to Fed. R. Civ. P. 26(c).[1]

RCF brings the instant motion seeking protective relief from discovery demands served by the debtor herein which on their face seek disclosure of privileged attorney-client communications exchanged between itself and its counsel, Cozen O'Connor ("Cozen"). As the demands seek quintessentially privileged information, they are patently improper and RCF's objections to same should be sustained. The debtor has ineffectually attempted to justify the demands and pierce the well-guarded privilege on the flawed reasoning that because Cozen also happened to represent the debtor in two Article 78 proceedings for a certain four-month period of time, the debtor and RCF were jointly represented by Cozen. Simply put, there was no joint representation.

First, RCF was never a party to the Article 78 proceedings and therefore Cozen did not represent RCF in connection with the sole and exceedingly limited (both temporally and substantively) capacity in which it represented the debtor. Second, there is likewise no dispute that the debtor knew of Cozen's pre-existing relationship with and representation of RCF and its principals. It is into communications pertaining to that pre-existing attorney-client relationship and representation that the debtor now seeks impermissibly to pry. Finally, where, as here, two parties merely have a joint commercial interest in a proceeding, the joint client or common interest doctrines do not apply to prevent the assertion of the privilege as between those two parties in a subsequent proceeding.

---

[1] This motion is being made as a Rule 26(c) motion for a protective order at the direction of the Court at the February 10, 2011 telephone conference. As further discussed below, the debtor has the burden of proof with respect to its attempt to pierce RCF's attorney-client privilege with its counsel.

The only alignment or mutuality of interest that ever existed between RCF and the debtor—otherwise adversaries at all times and for all purposes—was a simple matter of exigency. Both had a purely financial or commercial interest in the market value of the same piece of real property, albeit for very different reasons. At the time Cozen assumed the representation of the debtor in the Article 78 proceedings, RCF had already secured a significant foreclosure judgment against the debtor with respect to the property at issue in the those proceedings that was far in excess of the property's value. Any interest RCF had in the Article 78 proceedings was, thus, purely commercial. That is, to the extent the Article 78 proceedings, in which RCF was not a party, were successful, the result there had the potential to increase the value of RCF's collateral, *i.e.* its primary avenue of recovery against the debtor. The debtor, in turn, also had a commercial interest in the successful outcome of the Article 78 proceedings since any increase in the property value would serve to reduce the amount of the deficiency judgment that RCF would ultimately obtain in the foreclosure proceeding. Any common interest in the Article 78 proceeding was thus merely commercial in nature. Under the relevant law, such a mere commercial interest is insufficient to meet the debtor's heavy burden to pierce the attorney-client privilege between RCF and Cozen. Accordingly, RCF's motion for a protective order should be granted.

## **Background Facts**

It is not in dispute, and indeed is alleged by the debtor, that Cozen and specifically Mr. Roberts, had a preexisting relationship with RCF. *See* Debtor's Declaration Pursuant to S.D.N.Y. Local Bankruptcy Rule 1007-2 (Docket No. 1, Attach. No. 1) ¶ 13; *see also* email from Roberts to David H. Wander, counsel for the debtor, dated November 8, 2010, attaching two redacted documents demonstrating that Mr. Roberts was providing RCF with legal advice

concerning the Article 78 proceedings in December 2008 and September 2009 (copy annexed to the accompanying Declaration of Jarrett M. Behar, Esq., dated February 18, 2011 (the "Behar Decl.) as Exhibit A). It is also not in dispute that: (i) RCF is the only secured creditor of the debtor; (ii) the debt owed to RCF by the debtor was secured by the property at issue in the Article 78 proceedings; (iii) RCF had commenced a foreclosure proceeding against the debtor prior to the initiation of the Article 78 proceedings and had obtained a judgment of foreclosure on or about February 26, 2009 in excess of $9 million with interest accruing thereafter; (iv) the value of the property securing RCF's debt and at issue in the Article 78 proceedings was and is significantly less than the value of RCF's judgment of foreclosure; and (v) positive results in the Article 78 proceedings would both raise the value of RCF's collateral and reduce the amount of any deficiency judgment against the debtor. *See* letter from David H. Wander to the Court, dated February 10, 2011 (Docket No. 99).

The Article 78 proceedings were commenced by Glenn B. Allyn, Esq., of Allyn, Hausner & Montanile LLP ("Allyn") in 2008 and 2009 against the Village of Mamaroneck ("Village") in connection with changes to the Village law and Village zoning decisions that had an adverse effect on the project and, accordingly, the value of the land, *i.e.* RCF's collateral. Allyn was selected and retained by Ofer Attia ("Attia") on behalf of the debtor (*see* email, dated August 5, 2008 annexed to the Behar Decl. as Exhibit B), and Attia coordinated with Allyn in connection with the drafting, filing and strategy of the Article 78 proceedings. *See* emails, dated November 7, 2008, December 30, 2008, February 6, 2009, April 30, 2009, May 5, 2009 and May 13, 2009, (copies annexed to the Behar Decl. as Exhibits C, D, E, F, G, and H).

Beginning in May 2009, Attia became frustrated with Allyn's services in the Article 78 proceedings. *See* email dated May 29, 2009, August 13, 2009 (two), August 20, 2009,

4

September 24, 2009, and November 20, 2009 (copies annexed to the Behar Decl. as Exhibits I, J, K, L, M and N). Erik Ekstein "("Ekstein") monitored the progress of the Article 78 proceedings on behalf of RCF, which had a commercial interest in their success because they could increase the value of RCF's collateral. *See id.* In addition, Allyn refused to do any further work, including simply providing copies of the Article 78 proceeding to the debtor's land use attorney, without a new retainer letter. *See* email chain forwarded by Attia to Ekstein on December 17, 2009 (copy annexed to the Behar Decl. as Exhibit O).

Subsequently, Allyn became increasing aggressive in seeking further payment from both the debtor and Attia, and also from RCF, which had agreed with Attia to fund the Article 78 proceedings to protect the value of its collateral. As a result, Attia decided to switch counsel in connection with the Article 78 proceedings. RCF recommended Mr. Roberts because Mr. Roberts had been advising RCF on the Article 78 proceedings and their effect on RCF's interests and, as such, would not be starting from scratch, and because RCF and the debtor had similar commercial interests in the outcome of the Article 78 proceedings; to wit, successful prosecution of the Article 78 proceedings would increase the value of RCF's collateral and correspondingly decrease the amount of any deficiency judgment against the debtor. *See* January 14, 2010 email from Attia to Allyn advising Allyn that Mr. Roberts would be new counsel for the debtor in connection with the Article 78 proceedings (copy annexed to the Behar Decl. as Ex. P).

Because RCF had a judgment of foreclosure on the property and the foreclosure proceeding was ongoing, RCF and Attia negotiated a letter agreement to memorialize that Attia was dissatisfied with Allyn and did not have the funds to retain substitute counsel, and that replacing Allyn with RCF's attorney would not prejudice the foreclosure proceeding. Specifically, the letter confirms that

5

> [RCF's] involvement in the Article 78 proceedings won't affect any party's rights and remedies in connection with our foreclosure action against Sheldrake Lofts. As well, our financing the legal costs and involvement in the Article 78 proceedings won't affect any party's rights and remedies in connection with the Article 78 proceedings.

*See* email dated January 26, 2010 and attached letter agreement executed by Attia, dated January 26, 2010 (copy annexed to letter from David H. Wander to the Court, dated January 27, 2011 (Docket Nos. 95 (letter), 96 (exhibits) as Ex. 3).

Due to Allyn's claim for allegedly past due fees, the substitution of Cozen ultimately did not take place until Allyn's fee dispute was resolved in the middle of March 2010. *See* Docket No. 96. Ex. 10. Indeed, Mr. Roberts would not meet with Attia until Cozen was formally substituted in as counsel in the Article 78 proceedings. *See id.*, Ex. 8. The substitution was effective when Mr. Roberts filed the Consents to Change Attorneys in state court on March 17, 2010. *See* file-stamped copies of Consents (copies annexed to the Behar Decl. as Ex. Q).

The ensuing four-month period after March 17, 2010 was the only time Mr. Roberts or Cozen represented the debtor. During those four months, nothing of substance occurred in the Article 78 proceedings, no settlement was reached, and the debtor's rights were not affected in any way. Cozen merely appeared once at a status conference in the Article 78 proceedings, and Mr. Roberts attended just two meetings at which the Village provided information as to terms on which the Village would be willing to settle the Article 78 proceedings. *See* Docket No. 96, Exs. 11, 14, 16. The substance of these meetings were immediately conveyed to Attia along with the Village's sentiment that Attia's "direct communications with the Village are hurting your cause and that all communications should be through the lawyers." *Id.*, Ex. 16. Attia ultimately failed to heed Mr. Roberts' advice that Attia cease direct contact with the Village, and, as a result, Mr. Roberts' resigned as counsel in the Article 78 proceedings on July 19, 2010. *See id.*, Ex. 19.

6

During the four months Cozen represented the debtor, nothing occurred in the Article 78 proceedings that harmed, or even could have harmed, the debtor in any way. During that period, with Attia's knowledge and consent, Cozen also continued its prior representation of RCF, advising RCF as to status of the Article 78 proceedings and the relation between the Article 78 proceedings and RCF's foreclosure proceeding and collateral. Its representation of RCF has continued to date.

When he resigned in July 2010, Mr. Roberts immediately offered to Attia to consent to a new attorney substitution. Then, immediately upon Attia's request in August 2010, Mr. Roberts turned over all his files to Mr. Wander. Mr. Wander did nothing with the proceedings for two months, until he removed them to this Court in October 2010. In the four subsequent months, Mr. Wander has still done nothing of substance in either proceeding. *See generally* Dockets for Case Nos. 10-08424-rdd and 10-08426-rdd.

## Argument

As noted above, and as the debtor itself alleges, RCF and Cozen were in a pre-existing attorney-client relationship prior to Cozen's substitution into the Article 78 proceedings on March 17, 2010. As such, because each of the communications between RCF and Cozen listed on RCF's privilege log concern a request for legal advice, those communications fall squarely within the attorney-client privilege. *See Priest v. Hennessy*, 51 N.Y.2d 62, 68 (N.Y. 1980). The debtor is blatantly seeking such undisputed privileged material and, although RCF is moving for relief, it is the debtor's burden to establish why the zealously protected privilege should be compromised.

In an attempt to pierce that well-guarded privilege, the debtor attempts to argue that Cozen was jointly representing RCF and the debtor such that under either the joint client or

7

common interest doctrines neither would be entitled to any privilege *inter sese*. See Docket No. 95. The arguments are without merit.

The joint representation theory upon which the debtor principally relies to justify its patently improper demands simply has no application under the facts herein. As the foregoing facts make plain, Cozen never jointly represented the debtor and RCF. *See Opus Corp. v. International Business Machines Corp.*, 956 F.Supp. 1503 (D. Minn. 1996). Recall that Cozen represented the debtor alone in connection with the Article 78 proceedings. RCF was not a party to the Article 78 proceedings, and Cozen never represented RCF in connection with the Article 78 proceedings. On these undisputed facts alone, the debtor's attempt to invoke and apply a joint representation theory herein must fail. It is true that RCF was interested in the outcome of the Article 78 proceedings, but that was solely because it would increase the value of the property against which it held an unsatisfied judgment. RCF's interest in such an indirect benefit of a litigation to which it was not a party is plainly insufficient to establish that Cozen was jointly representing both the debtor and RCF in those proceedings.

Simply because two clients share the same attorney does not mean that they are jointly represented by that attorney, even where the subject matter of such representations may be similar. *See Opus Corp.*, 956 F.Supp. at 1506-07 (rejecting claim of joint representation for the purpose of piercing the privilege and observing that "while the parties had retained a common law firm, that retention frequently had individualized, and substantially diverse, goals"). Here, Cozen's representation of RCF before, during, and after its limited representation of the debtor concerned matters that were diverse from and, in fact, adverse to, the interests of the debtor. The mere facts that Cozen was also briefly engaged to represent the debtor, and that RCF had a commercial interest in the outcome of the Article 78 proceedings (to which it was not a party),

offer no basis to allow the debtor to invade the privilege arising out the separate, pre-existing attorney-client relationship between RCF and Cozen. *See Am. Re-Ins. Co. v U.S. Fid. & Guar. Co.*, 40 A.D.3d 486, 491 (1st Dep't 2007)("As a general rule, there is no automatic waiver of the attorney-client privilege merely because the parties have a common interest in the outcome of a particular issue.")(internal citations and quotations omitted).

To the extent the debtor seeks to invoke the related but distinct common interest doctrine, its reliance upon same is misplaced. The common interest doctrine generally *enlarges* the attorney-client privilege rather than narrowing it by extending the privilege to communications between an attorney and another (non-client) that shares a common interest with the client. As discussed below, the only marginal relevance the doctrine has herein is the instructive manner in which courts have limited the application of the doctrine to instances where the parties share a common *legal* interest as distinct from a common *commercial* interest.

Regardless of the name of the vehicle by which the debtor seeks to invade the privilege, it is clear that to "warrant invasion of the attorney-client relationship with the privilege attaching to confidential communications which the law rather zealously protects," a common desire to succeed in a litigation is an insufficient common interest. *International Ins. Co. v. Newmont Mining Corp.*, 800 F. Supp. 1195, 1196 (S.D.N.Y. 1992). This is even true where the party claiming the privilege paid the legal fees for the party claiming the common interest. *See id.* at 1197.

Even where parties are represented by the same counsel, it is only where the parties have an identical legal interest, rather than a mere common commercial interest, that the privilege may be waived. *See, e.g., Gulf Islands, Inc. v. Bombardier Capital, Inc.,* 215 F.R.D. 466, 471 (S.D.N.Y. 2003) ("Like all privileges, the common interest rule is narrowly construed. . . .

[C]ommunications regarding business matters—even where litigation is pending or imminent—do not qualify for protection under the common interest rule.") (finding that one affiliate's hope that another affiliate would succeed in a litigation so that the first affiliate would obtain payment from a client was not a common legal interest; same finding regarding first affiliate's hope that client would not breach various agreements with second affiliate so that first affiliate would obtain payment); *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Center Properties LLC*, 2002 WL 1334821, at * (S.D.N.Y. June 19, 2002) ("The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial. . . . There has been no showing that Willis and the Silverstein Parties have an identical legal interest, as required . . . . Willis is not a party to this litigation, and its legal position will be unaffected by the outcome of this case.") (internal citations and quotation marks omitted); *Shamis v. Ambassador Factors Corp.,* 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999) ("Although Shamis and BankBoston would both benefit from a judgment in favor of the plaintiff, they do not share identical legal interests. Indeed sharing a desire to succeed in an action does not create a common interest.") (internal citation and quotation marks omitted); *North River Ins. Co. v. Columbia Casualty Co.*, 1995 WL 5792 at *3-*5 (S.D.N.Y. Jan. 5 1995) (common legal interest requires "actual cooperation toward a common legal goal" and coordination of legal strategy); *Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyd's London*, 176 Misc.2d 605, 612, 676 N.Y.S.2d 727, 732 (Sup. Ct. N.Y. County 1998), *aff'd* 263 A.D.2d 367, 692 N.Y.S.2d 384 (1st Dep't 1999) ("The attorney-client privilege . . . is subject to severe limitations and a narrow construction. Thus any common interest privilege must be limited to . . . parties that have a common legal interest. . . . [It] may not be used to protect communications that are business oriented . . . .")

Indeed, Magistrate Eaton recognized this distinction in *Eugenia VI Venture Holdings, Ltd. v. Chabra*, 2006 WL 1096825 (S.D.N.Y. April 25, 2006), which acknowledged the distinction between a mere commercial interest, *i.e.* where the result of the litigation would have a beneficial outcome on the commercial interests of both parties, and a common legal interest, which, at the very least, requires a coordination of legal strategy. *Id.* at *2. The decision further acknowledged that a common legal interest did not exist where the party asserting the privilege was not a party to the litigation and its legal position would be unaffected by the outcome of the case. *Id.* (citing *Aetna Casualty & Surety Co.*, *supra*).

This is the exact circumstance that is present here. RCF is not and has never been a party to the Article 78 proceedings, and its legal position will not be affected by their result. At the time of Cozen's substitution, RCF already had a significant judgment of foreclosure greatly in excess of the value of the property against the debtor, and, as such, the only possible effect of the Article 78 proceedings on RCF would be a possible increase in the value of RCF's collateral, *i.e.* a solely commercial interest.

Although Cozen's joint discussions with both RCF and the debtor present as to how to accommodate both clients' commercial interests in a settlement were obviously not privileged from either client, its private communications with either client are privileged from the other client. There is simply no basis for the debtor to invade the privilege that protected Cozen's private communications with RCF during the 4-month period in which Cozen represented the debtor in the Article 78 proceedings.

## **Conclusion**

For the foregoing reasons, it is respectfully requested that the debtor's attempt to invade the attorney-client privilege between RCF and Cozen be denied, and that RCF be granted a protective order, pursuant to Fed. R. Civ. P. 26(c), precluding such disclosure, and such other and further relief as the Court deems just and proper.

Dated: Central Islip, New York
February 18, 2011

SINNREICH KOSAKOFF & MESSINA LLP

By: /s/ Jarrett M. Behar
Jarrett M. Behar (JB-4983)
267 Carleton Avenue, Suite 301
Central Islip, New York 11722
p: (631) 650-1200
f: (631) 650-1207
email: jbehar@skmlaw.net

Attorneys for
Remediation Capital Funding LLC